# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| Daniel Meir, individually and on behalf of all other similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> LG CHEM AMERICA, INC.; LG CHEM, LTD; PANASONIC CORPORATION; PANASONIC CORPORATION OF NORTH AMERICA; SANYO ELECTRIC CO., LTD; SONY ENERGY DEVICES CORPORATION; SONY ELECTRONICS, INC.; SAMSUNG SDI CO., LTD.; SAMSUNG SDI AMERICA, INC.; HITACHI, LTD.; HITACHI MAXELL, LTD.; and MAXELL CORPORATION OF AMERICA, <br><br> Defendants. | Civil Action No. <br><br><br> **CLASS ACTION COMPLAINT** <br><br> <u>**DEMAND FOR TRIAL BY JURY**</u> |

Plaintiff Daniel Meir ("Plaintiff"), on behalf of himself and all others similarly situated (the "Class" as defined below), upon personal knowledge as to the facts pertaining to himself and upon information and belief as to all other matters, based on the investigation of counsel, brings this class action for damages, injunctive relief and other relief pursuant to the federal antitrust laws, demands a trial by jury, and alleges as follows:

## NATURE OF THE CASE

1.      This lawsuit is brought as a proposed class action against the above-captioned Defendants, the world's largest manufacturers of Lithium Ion Batteries (defined below) globally and in the United States, for engaging in a conspiracy to unlawfully fix and artificially raise the prices of Lithium Ion Batteries.

2.      Defendants, their parents, subsidiaries, and affiliates have orchestrated some of the largest global price-fixing conspiracies of the past decade – fixing the prices of key components for consumer electronic goods including computers, televisions and cellular phones.  These entities, and many of their executives, have pleaded guilty to price-fixing dynamic random access memory (DRAM) chips, liquid crystal display (LCD) screens, and optical disc drives.  These component part conspiracies – like the conspiracy to fix Lithium Ion Battery prices – all have very similar features, including:  (a) a highly concentrated market, controlled by some or all of the Defendants; (b) pricing pressure exerted on the conspirators by original equipment manufacturers ("OEMs") seeking to price their products in a competitive consumer electronics markets; (c) rapid commoditization of new technology; and (d) pricing behavior inconsistent with a competitive market.

3.      Defendants' conspiracy successfully targeted yet another key component of consumer electronic goods by raising prices for Lithium Ion Batteries and, in turn, the prices of Lithium Ion Battery Products (defined below) such as that purchased by the Plaintiff.

4.      Plaintiff seeks to represent all persons and entities that, in the United States, directly purchased a Lithium Ion Battery or Lithium Ion Battery Product from a Defendant

during the period from and including January 1, 2002 through such time as the anticompetitive effects of Defendants' conduct ceased (the "Class Period").

5. "Lithium Ion Batteries," as used in this Complaint, are batteries that are rechargeable and which utilize lithium ion technology.

6. "Lithium Ion Battery Products," as used in this Complaint, are consumer products containing one or more Lithium Ion Batteries.

7. Defendants LG Chem America, Inc., LG Chem, Ltd., Panasonic Corporation, Panasonic Corporation of North America, Sanyo Electric Co., Ltd., Sanyo North America Corporation, Sony Corporation, Sony Electronics, Inc., Sony Energy Devices Corporation, Samsung SDI Co., Ltd., Samsung SDI America, Inc., Hitachi, Ltd., Hitachi Maxell, Ltd., and Maxell Corporation of America (collectively "Defendants") manufacture, market, and sell Lithium Ion Batteries throughout the United States and the world. Defendants collectively controlled approximately two-thirds or more of the worldwide market for Lithium Ion Batteries throughout the Class Period. The manufacture and sale of Lithium Ion Batteries is a multi-billion dollar industry. In 2011, the worldwide market for Lithium Ion Batteries was approximately $15 billion.

8. Defendants and other co-conspirators (as yet unknown) agreed, combined and conspired to inflate, fix, raise, maintain, or artificially stabilize prices of Lithium Ion Batteries.

9. As further described below, competition authorities in the United States have been investigating a conspiracy in the market for Lithium Ion Batteries since at least the first half of 2011. Specifically, the Antitrust Division of the United States Department of Justice ("DOJ") is

conducting a criminal investigation into anticompetitive conduct in the market for Lithium Ion Batteries.

10.     Defendants participated in a combination and conspiracy to suppress and eliminate competition in the market for Lithium Ion Batteries by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, Lithium Ion Batteries in the United States.  The combination and conspiracy engaged in by Defendants was an unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

11.     As a direct result of the anticompetitive and unlawful conduct alleged herein, Plaintiff and the Class paid artificially inflated prices for Lithium Ion Batteries and Lithium Ion Battery Products during the Class Period, and have thereby suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

12.     This action is instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages, and the costs of this suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiff and the members of the Class by virtue of Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and to enjoin further violations.

13.     This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and Title 28, United States Code, Section 1331 and 1337.

4

14. Venue is proper in this district pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants reside, are licensed to do business in, are doing business in, had agents in, or are found or transact business in this District.

15. This Court has *in personam* jurisdiction over each of the Defendants because each Defendant, either directly or through the ownership and/or control of its United States subsidiaries, *inter alia*: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of Lithium Ion Batteries throughout the United States, including in this District; (c) had substantial aggregate contacts with the United States as a whole, including in this District; or (d) was engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. Defendants also conduct business throughout the United States, including this District, and they have purposefully availed themselves of the laws of the United States.

16. Defendants engaged in conduct both inside and outside the United States that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

5

17.     The activities of Defendants and their co-conspirators were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States. Defendants' products are sold in the flow of interstate commerce.

18.     Lithium Ion Batteries manufactured abroad by Defendants and sold for use in Lithium Ion Battery Products either manufactured in the United States or manufactured abroad and sold in the United States are goods brought into the United States for sale, and therefore constitute import commerce. To the extent any Lithium Ion Batteries are purchased in the United States, and such Lithium Ion Batteries do not constitute import commerce, Defendants' unlawful activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce. The anti-competitive conduct, and its effects on United States commerce described herein, proximately caused antitrust injury to the Plaintiff and members of the Class in the United States.

19.     By reason of the unlawful activities alleged herein, Defendants substantially affected commerce throughout the United States, causing injury to the Plaintiff and members of the Class. Defendants, directly and through their agents, engaged in a conspiracy to fix or inflate prices of Lithium Ion Batteries, which unreasonably restrained trade and adversely affected the market for Lithium Ion Batteries and Lithium Ion Battery Products.

20.     Defendants' conspiracy and wrongdoing described herein adversely affected persons in the United States who purchased Lithium Ion Batteries and Lithium Ion Battery Products, including Plaintiff and members of the Class.

## PARTIES

21.     Plaintiff Daniel Meir is a resident of Englewood, New Jersey.  Plaintiff Meir purchased a Lithium Ion Battery Product directly from one of the Defendants during the Class Period.  As a result of the antitrust violations alleged in this Complaint, the Plaintiff has suffered injury.

**The LG Chem Defendants**

22.     Defendant LG Chem America, Inc. is a Delaware corporation headquartered at 910 Sylvan Avenue, Englewood Cliffs, New Jersey, 07632.  Defendant LG Chem America, Inc. is a wholly-owned subsidiary of Defendant LG Chem, Ltd.  Defendant LG Chem America, Inc. – either directly or through its wholly-owned or controlled subsidiaries – manufactured, marketed and sold Lithium Ion Batteries that were purchased throughout the United States, including in this District, during the Class Period.

23.     Defendant LG Chem, Ltd. is a Korean corporation headquartered at 20 Yeouido-dong, Yeongdeungpo-gu, Seoul 150-721, South Korea.  Defendant LG Chem, Ltd. is an affiliate of Seoul-based conglomerate LG Electronics.  LG Chem, Ltd. is one of the world's leading manufacturers of Lithium Ion Batteries.  LG Chem, Ltd. – either directly or through its wholly-owned or controlled subsidiaries – manufactured, marketed and sold Lithium Ion Batteries that were purchased throughout the United States, including in this District, during the Class Period.

24.     Defendants LG Chem, Ltd. and LG Chem America, Inc. are collectively referred to herein as "LG Chem."

**The Panasonic Defendants**

25.     Defendant Panasonic Corporation of North America, formerly known as Matsushita Electric Corporation of America, is a Delaware Corporation with its principal place of business at One Panasonic Way, Secaucus, New Jersey 07094.  Panasonic Corporation of North America is a wholly-owned and controlled subsidiary of Defendant Panasonic Corporation.  Defendant Panasonic Corporation of North America – either directly or through its wholly-owned or controlled subsidiaries – manufactured, marketed and sold Lithium Ion Batteries and Lithium Ion Battery Products that were purchased throughout the United States, including in this District, during the Class Period.

26.     Defendant Panasonic Corporation, formerly known as Matsushita Electric Industrial Co., Ltd., is a Japanese Corporation headquartered at 1006 Oaza Kadoma, Kadoma-shi, Osaka 57108501, Japan.  Defendant Panasonic Corporation is one of the world's leading manufacturers of Lithium Ion Batteries.  Defendant Panasonic Corporation – either directly or through its wholly-owned or controlled subsidiaries – manufactured, marketed and sold Lithium Ion Batteries and Lithium Ion Battery Products that were purchased throughout the United States, including in this District, during the Class Period.

27.     Defendant Sanyo Electric Co., Ltd. is a Japanese corporation headquartered at 5-5 Keihan-Hondori 2-chome, Moriguchi City, Osaka 570-8677, Japan.  Defendant Sanyo Electric Co., Ltd. is one of the largest manufacturers and suppliers of Lithium Ion Batteries in the world.  Defendant Sanyo Electric Co., Ltd. – either directly or through its wholly-owned or controlled subsidiaries – manufactured, marketed and sold Lithium Ion Batteries and Lithium Ion Battery

8

Products that were purchased throughout the United States, including in this District, during the Class Period.

28.     Defendant Sanyo North America Corporation is a Delaware Corporation with its principal place of business at 2055 Sanyo Avenue, San Diego, California 92154.  Defendant Sanyo North America Corporation is a wholly-owned subsidiary of Defendant Sanyo Electric Co., Ltd.  Defendant Sanyo North America Corporation – either directly or through its wholly-owned or controlled subsidiaries – manufactured, marketed and sold Lithium Ion Batteries and Lithium Ion Battery Products that were purchased throughout the United States, including in this District, during the Class Period.

29.     Defendants Panasonic Corporation, Panasonic Corporation of North America, Sanyo Electric, Co., Ltd., and Sanyo North America Corporation are collectively referred to as "Panasonic."

**The Sony Defendants**

30.     Defendant Sony Electronics, Inc. is a Delaware Corporation with its principal place of business at 16530 Via Esprillo, MZ 7180, San Diego, CA 92127.  Defendant Sony Electronics, Inc. is a wholly-owned and controlled subsidiary of defendant Sony Corporation. Defendant Sony Electronics, Inc. – either directly or through its wholly-owned or controlled subsidiaries – manufactured, marketed and sold Lithium Ion Batteries and Lithium Ion Battery Products that were purchased throughout the United States, including in this District, during the Class Period.

31.     Defendant Sony Corporation is a Japanese corporation headquartered at 1-7-1 Konan, Minato-Ku, Tokyo 108-0075, Japan.  Defendant Sony Corporation invented the Lithium Ion Battery in 1991 and has remained one of the world's leading suppliers of Lithuim Ion Batteries.  Defendant Sony Corporation – either directly or through its wholly-owned or controlled subsidiaries – manufactured, marketed and sold Lithium Ion Batteries and Lithium Ion Battery Products that were purchased throughout the United States, including in this District, during the Class Period.

32.     Defendant Sony Energy Devices Corporation is a Japanese corporation headquartered at 1-1 Shimosugishita, Takakura, Hiwada-machi, Koriyama-shi, Fukushima, 963-0531, Japan.  Defendant Sony Energy Devices Corporation is a wholly-owned subsidiary of defendant Sony Corporation.  Defendant Sony Energy Devices Corporation – either directly or through its wholly-owned or controlled subsidiaries – manufactured, marketed and sold Lithium Ion Batteries and Lithium Ion Battery Products that were purchased throughout the United States, including in this District, during the Class Period.

33.     Defendants Sony Corporation, Sony Energy Devices Corporation, and Sony Electronics, Inc. are collectively referred to as "Sony."

**The Samsung Defendants**

34.     Defendant Samsung SDI America, Inc. is a California corporation with its principal place of business at 3333 Michelin Drive, Suite 700, Irvine, California 92612.  Samsung SDI America, Inc. is a wholly-owned and controlled subsidiary of Defendant Samsung SDI Co., Ltd.  Defendant Samsung SDI America, Inc. – either directly or through its wholly-owned or controlled subsidiaries – manufactured, marketed and sold Lithium Ion

10

Batteries and Lithium Ion Battery Products that were purchased throughout the United States, including in this District, during the Class Period.

35.     Defendant Samsung SDI Co., Ltd. is a Korean corporation headquartered at 428-5 gongse-dong Giheung-gu, Yongin Kyunggi-do, South Korea.  Defendant Samsung SDI Co., Ltd. is the world's largest manufacturer of Lithium Ion Batteries.  Defendant Samsung SDI Co., Ltd. – either directly or through its wholly-owned or controlled subsidiaries – manufactured, marketed and sold Lithium Ion Batteries and Lithium Ion Battery Products that were purchased throughout the United States, including in this District, during the Class Period.

36.     Defendants Samsung SDI and Samsung SDI America are collectively referred to as "Samsung SDI."

**The Hitachi Defendants**

37.     Defendant Hitachi, Ltd. is a Japanese company with its principal place of business at 1-6-6 Marunouchi, Chiyoda-ku, Tokyo 100-8280, Japan.  Defendant Hitachi, Ltd. – either directly, or through a wholly-owned or controlled subsidiary – manufactured, marketed and sold Lithium Ion Batteries and Lithium Ion Battery Products that were purchased throughout the United States, including in this District, during the Class Period.

38.     Defendant Hitachi Maxell, Ltd. is a Japanese corporation with its principal place of business at 2-18-2, Iidabashi, Chiyoda-ku, Tokyo, 102-8521 Japan.  Defendant Hitachi-Maxell is a wholly-owned subsidiary of Defendant Hitachi, Ltd.  Defendant Hitachi Maxell, Ltd. – either directly, or through a wholly-owned or controlled subsidiary – manufactured, marketed and sold Lithium Ion Batteries and Lithium Ion Battery Products that were purchased throughout the United States, including in this District, during the Class Period.

39.     Defendant Maxell Corporation of America is a New Jersey corporation with its principal place of business at 3 Garett Mountain Plaza, 3rd Floor, Suite 300, Woodland Park, New Jersey, 07424. Defendant Maxell Corporation of America – either directly, or through a wholly-owned or controlled subsidiary – manufactured, marketed and sold Lithium Ion Batteries and Lithium Ion Battery Products that were purchased throughout the United States, including in this District, during the Class Period.

40.     Defendants Hitachi, Ltd., Hitachi-Maxell, Ltd., and Maxell Corporation of America are collectively referred to as "Hitachi."

### AGENTS AND CO-CONSPIRATORS

41.     Each Defendant acted as the principal of or agent for other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

42.     Various persons, partnerships, sole proprietorships, firms, corporations and individuals not named as Defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anticompetitive conduct.

43.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporations' or limited liability entity's business or affairs.

## TRADE AND COMMERCE

44.     During the Class Period, Defendants sold substantial quantities of Lithium Ion Batteries shipped from outside the United States to direct purchasers located in various states in the United States in a continuous and uninterrupted flow of interstate and foreign trade and commerce.  In addition, substantial quantities of equipment and supplies necessary to the production and distribution of Lithium Ion Batteries, as well as payments for Lithium Ion Batteries and related products sold by Defendants, traveled in interstate and foreign trade and commerce.  The business activities of Defendants in connection with the production and sale of Lithium Ion Batteries that were the subject of the charged conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

## FACTUAL ALLEGATIONS

### A.     Lithium Ion Batteries

45.     Lithium Ion Batteries possess certain unique performance qualities which make them the most popular form of secondary (i.e., rechargeable) battery.  Because of these unique characteristics, Lithium Ion Batteries are not interchangeable with other types of secondary batteries such as nickel cadmium or nickel-metal hydride.

46.     Unlike other forms of rechargeable batteries (such as nickel-cadmium or nickel-metal hydride), Lithium Ion Batteries are the only rechargeable batteries which do not suffer from any "memory effect."  For example, if a nickel-cadmium battery is charged repeatedly to 70% capacity, the discharge voltage will begin to fall sharply from the 70% level even after a full charge and, eventually, the battery will be incapable of holding a charge.  The battery essentially remembers 70% as the full capacity.  Lithium Ion Batteries, on the other hand, do

13

not suffer from the memory effect, and there is no risk to reducing the capacity of the battery when only partially charging the battery.

47.     A second feature which makes Lithium Ion Batteries unique is that they are more powerful than all other types of rechargeable batteries.  For example, the nominal voltage of a nickel-metal hydride rechargeable battery is 1.2 volts.  The nominal voltage of a Lithium Ion Battery, by comparison, is 3.7 volts, nearly three times more powerful.

48.     Lithium Ion Batteries also possess a higher "energy density" than other types of rechargeable batteries.  Lithium Ion Batteries can generate the same amount of electricity as a heavier and larger rechargeable battery of a different type.  Lithium Ion Batteries can be as much as 70% lighter and 60% smaller in volume than nickel hydride batteries, but deliver the same amount of power.

49.     Lithium Ion Batteries also retain their charge better than other types of rechargeable batteries.  For example, Lithium Ion Batteries lose only about 5% of their charge per month when idle.  Standard nickel-metal hydride batteries may lose up to 40% of their stored energy in a month, and may be fully empty in as little as two months.

50.     Because of their superior performance characteristics and small size, Lithium Ion Batteries have become the standard battery used in consumer electronics products.

**B.      The Price Movements of Lithium Ion Batteries During the Class Period Defy Fundamental Economic Principles**

51.     Many analysts predicted that, given the economics of the marketplace, prices of Lithium Batteries would go down during the Class Period.  But prices not only failed to decline throughout most of the Class Period – prices actually rose, defying industry expectations.

52.     Lithium Ion Batteries were undergoing substantial and continuous technological change that was rapidly improving the energy density of the batteries (watt-hours delivered per weight or volume) and reducing costs.  Such technological progress continued unabated over the past decade; today, energy density of Lithium Ion Batteries is as high as 250 wh/kg, or 620 wh/l.

53.     Numerous technical studies undertaken in the early- to mid-2000s predicted that scale economies and learning curves would act to sharply lower cost as production volumes expanded.  For example, a 2006 MIT study concluded that, "[i]n addition to [their] fundamental advantage with respect to specific energy and power, lithium-ion batteries also offer the potential for lower cost as the technology matures and production volumes increase.  Although more expensive than NiMH batteries today, lithium-ion batteries scale more readily to high volume production hence have greater potential for cost reduction. . . . Perhaps more importantly, while the most expensive constituent materials of NiMh battery are intrinsically tied to the commodity price of nickel (relatively expensive), lithium ion batteries may be made from a number of different fungible materials. . . . Over the longer-term, there is strong potential to transition to even lower cost materials."

54.     The production volume of Lithium Ion Batteries expanded significantly during the Class Period, as anticipated.

55.     Basic economics support the notion that, in a competitive market, this rapidly increasing production should have been associated with continuing price declines for Lithium Ion Batteries.

56.     As a result of the conduct of the price-fixing cartel alleged in this Complaint, however, these price declines did not materialize.  The interruption of the price decline was perceived merely as a temporary deviation from the expected trend, rather than as the beginning of a collusive effort by producers to prevent further erosion of prices.

57.     No later than early 2002, Defendants entered into an illegal conspiracy to stabilize and raise prices for Lithium Ion Batteries.  The impact of Defendants' conspiracy can be observed through the South Korean government's producer price index ("PPI") for Lithium Ion Batteries, which is prepared by the Bank of Korea.  The price index is an effective tool for measuring price changes over time, because it controls for changes in the mix of size and qualities of batteries being produced.

58.     The PPI shows that Lithium Ion Battery prices commenced a steep decrease in early 2000 and that prices continued to fall sharply until 2002.

59.     After this sharp two-year decline, Lithium Ion Battery prices suddenly stabilized in early 2002.  In fact, as documented by the PPI, during the period between mid-2002 and mid-2008, the dramatic decline of Lithium Ion Battery prices that took place earlier that decade completely ceased.  Lithium Ion Battery prices actually rose at several intervals between 2002 and 2008.

60.     As a result of the worldwide economic crisis which commenced in or around 2007, demand for Lithium Ion Batteries began to decline.  Accordingly, beginning in or around January 2008, the prices for Lithium Ion Batteries began a steady decline which ended in or around January 2009.

61.     Corresponding with the decline in prices during 2008, Defendants dramatically and collusively cut production in an effort to stem the decline in prices. This dramatic coordinated cut in production achieved its desired result: the price for Lithium Ion Batteries stabilized by the end of 2009.

62.     Having succeeded in stabilizing prices, Defendants then increased output in mid-2010, thus returning production to the levels that prevailed prior to the 2009 coordinated production cuts while holding prices steady.

63.     In a competitive market, producers expand output to the point where the price received covers the incremental or marginal cost of the last unit produced. Defendants' dramatic, coordinated reduction in production – only to increase output five months later to nearly the same production levels – is not plausibly the result of competitive forces.

64.     This production and pricing behavior is, instead, consistent with the existence of an anticompetitive agreement. Indeed, when Defendants increased production in mid-2010, prices remained flat for about six months. Such pricing behavior is anomalous in a competitive market, where prices generally drop when output increases.

65.     Lithium Ion Battery prices remained stable – yet again – until Defendants received notice in mid-2011 that they were being investigated by the DOJ for price-fixing Lithium Ion Batteries. The PPI for Lithium Ion Batteries fell within three months of Defendants' disclosure that they were being investigated. Such a price decline is consistent with the end of a cartel which had artificially raised prices, and supports the allegation of collusion occurring before this time.

**C.    The Structure and Characteristics of the Lithium Battery Market Render The Conspiracy Plausible**

66.    The structure and other characteristics of the Lithium Ion Battery market in the United States are conducive to a price-fixing agreement, and have made collusion particularly attractive in this market.  Specifically, the Lithium Ion Batteries market:  (1) has high barriers to entry; (2) has inelasticity of demand; and (3) is highly concentrated.

### 1.    The Lithium Ion Batteries market has high barriers to entry.

67.    A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supracompetitive pricing.  Where, however, there are significant barriers to entry, new entrants are less likely.  Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

68.    There are substantial barriers that preclude, reduce or make more difficult entry into the Lithium Ion Batteries market.  A new entrant into the market would face costly and lengthy start-up costs, including multi-million dollar costs associated with research and development, manufacturing plants and equipment, energy, transportation distribution infrastructure, skilled labor and longstanding customer relationships.

69.    In addition to the large costs of building a plant, any new entrant would be required to comply with significant environmental regulations.  Compliance with such regulations would require extensive testing and the receipt of government approvals, all of which would take many years.

18

70.     Defendants also own multiple patents for Lithium Ion Batteries.  This intellectual property places a significant and costly burden on potential new entrants, who must avoid infringing on the patents when entering the market with a new product.

### 2.     The demand for Lithium Ion Batteries is Inelastic.

71.     "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other.  Demand is said to be "inelastic" if an increase in the price of a product results in a relatively smaller decline in the quantity sold of that product.  Demand is inelastic where customers have nowhere to turn for substitute, cheaper products of similar quality, and therefore continue to make purchases despite a price increase.

72.     For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices.  Otherwise, increased prices would result in declining sales, revenues and profits, as customers purchased substitute products or declined to buy altogether.  Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

73.     Demand for Lithium Ion Batteries is inelastic because there are no close substitutes for these products.  In addition, customers must purchase Lithium Ion Batteries as an essential part of another product, even if the battery prices are maintained at a supracompetitive level.

### 3.     The market for Lithium Ion Batteries is highly concentrated.

74.     A highly concentrated market is more susceptible to collusion and other anticompetitive practices.  There is a high level of concentration among firms in the Lithium Ion

Batteries market, as evidenced by the fact the top five manufacturers (all of which are Defendants) accounted for 71% of the global market for Lithium Ion Batteries in 2010.

### D. Governmental Investigations

75. A globally-coordinated antitrust investigation is taking place in at least the United States and Europe, aimed at suppliers of Lithium Ion Batteries.

76. In or around May 2011, Defendant Sony Corporation disclosed that its wholly-owned U.S. Subsidiary – Sony Electronics, Inc. – received a subpoena from the Antitrust Division of the U.S. Department of Justice ("DOJ") concerning its secondary batteries business. Specifically, Sony disclosed that:

> In May 2011, Sony Corporation's U.S. subsidiary, Sony Electronics, Inc., received a subpoena from the U.S. Department of Justice ("DOJ") Antitrust Division seeking information about its secondary battery business. Sony understands that the DOJ and agencies outside the United States are investigating competition in the secondary batteries market. Based on the stage of the proceedings, it is not possible to estimate the amount of loss or range of possible loss, if any, that might result from adverse judgments, settlements or other resolutions of this matter.

77. On or about August 20, 2012 LG Chem confirmed that it also was a target of the investigation being conducted by the DOJ.

78. News reports have confirmed that, in addition to Defendants Sony and LG Chem, Samsung SDI and Panasonic are also under investigation by the DOJ for price fixing with respect to the sale of rechargeable batteries.

79. Defendants' anticompetitive behavior is the subject of a criminal grand jury investigation being conducted by the DOJ. In order for the DOJ to institute a grand jury investigation, a DOJ Antitrust Division attorney must believe that a crime has been committed

and prepare a detailed memorandum to that effect. Following a review of that memorandum, the request for a grand jury must be approved by the Assistant Attorney General for the Antitrust Division, based on the standard that a criminal violation may have occurred. In addition, the fact that the DOJ Antitrust Division investigation is criminal, as opposed to civil, is significant as well. The Antitrust Division's "Standards for Determining Whether to Proceed by Civil or Criminal Investigation" states: "[i]n general, current Division policy is to proceed by criminal investigation and prosecution in cases involving horizontal, *per se* unlawful agreements such as price fixing, bid rigging and horizontal customer and territorial allocations." Accordingly, the existence of a criminal investigation into the market for Lithium Ion Batteries supports the existence of the unlawful conspiracy alleged in this Complaint.

### E. Defendants Have a History of Colluding to Fix Prices for Critical Components of Consumer Electronics

80. Many of the Defendants have a long history of collusion and are either currently involved in worldwide competition authority investigations into other technology-related products, or have been convicted of participating in price fixing cartels involving technology-related products. Further, much of the illegal conduct to which the Defendants or their affiliates have admitted took place during the Class Period identified in this Complaint.

81. A notebook computer contains four key pieces of hardware: a dynamic random access memory (DRAM) chip, a liquid crystal display (LCD) screen, an optical disk drive (ODD), and a rechargeable lithium-ion rechargeable battery. Defendants here have pled guilty to fixing the prices of the first three of these components and, as alleged herein, the DOJ is investigating whether to bring criminal price-fixing charges with respect to the fourth component – Lithium Ion Batteries.

82.     In or around October 2005, Samsung Electronics Company, Ltd. and Samsung Semiconductor, Inc. agreed to plead guilty and pay a $300 million fine for "participating in an international conspiracy to fix prices in the [Dynamic Random Access Memory] market . . . ." Samsung Electronics Company, Ltd. and Samsung Semiconductor, Inc. admitted that they participated in the conspiracy from approximately April 1, 1999 through June 15, 2002.  In addition, six Samsung executives agreed to plead guilty to participating in the conspiracy with respect to DRAM.  Each executive agreed to pay a $250,000 criminal fine and serve a prison sentence in the United States ranging from seven to fourteen months.

83.     Although it has not been publicly acknowledged, it is widely believed that Samsung is in the DOJ leniency program with respect to the DOJ's investigation into the market for LCDs, meaning that it has admitted its participation in the cartel.

84.     In November 2008, LG Display Co., Ltd. ("LG Display"), a wholly-owned Korean subsidiary of LG Electronics, agreed to plead guilty and pay a $400 million fine to the United States in connection with its participation in a worldwide conspiracy to fix the prices of LCDs during the period from September 2001 through June 2006.  In addition, multiple LG Display executives agreed to plead guilty to participating in the global conspiracy with respect to LCDs.

85.     In March 2009, Hitachi Displays, Ltd., a wholly-owned Japanese subsidiary of Hitachi, Ltd., agreed to plead guilty and pay a $31 million fine for participating in a worldwide conspiracy to fix the prices of LCDs during the period from April 1, 2011 through March 31, 2004.

86.     In September 2011, Hitachi-LG Data Storage, Inc. – a joint venture between Defendant Hitachi Ltd. and LG Electronics, Inc. – agreed to plead guilty and pay a $21.1 million fine for conspiring to rig bids and fix prices for ODDs during the period from June 2004 through September 2009.  In addition, three Hitachi-LG Data Storage executives agreed to plead guilty for participating in the same conspiracy. All three executives agreed to serve prison time in the United States and pay criminal fines.

87.     Defendants have also entered guilty pleas for fixing prices for other high-tech products.

88.     In or around March 2011, Defendant Samsung SDI, Company, Ltd. agreed to plead guilty and pay a $32 million fine for participating in a "global conspiracy to fix prices, reduce output, and allocate market share of color display tubes, a type of cathode ray tube used in computer monitors and other specialized applications . . . ."  Samsung SDI Company, Ltd. admitted that it participated in the conspiracy from approximately January 1997 through at least March 2006.

89.     In September 2010, Defendant Panasonic Corporation agreed to plead guilty and pay a $49.1 million fine for participating in a conspiracy to "suppress and eliminate competition by fixing prices to customers of household compressors" during the period from October 14, 2004 through December 31, 2007.

## CLASS ACTION ALLEGATIONS

90.     Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2)-(3), on his own behalf and as a representative of the following class of persons and entities (the "Class"):

> All persons or entities that purchased a Lithium Ion Battery or Lithium Ion Battery Product directly from a Defendant in the United States during the Class Period. Excluded from the Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

91.     While Plaintiff does not know the exact number of members of the Class, Plaintiff believes there are (at least) thousands of members in the Class.

92.     Common questions of law and fact exist as to all members of the Class.  This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all members of the Class, thereby making appropriate relief with respect to the Class as a whole. Such questions of law and fact common to the Class include, but are not limited to:

(a)     Whether Defendants and their co-conspirators engaged in a combination or conspiracy among themselves to fix, raise, maintain or stabilize the prices of Lithium Ion Batteries sold in the United States;

(b)     The identity of the participants in the alleged conspiracy;

(c)     The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)     Whether the alleged conspiracy violated the Sherman Act;

(e)     Whether the conduct of Defendants and their co-conspirators, as alleged

24

in this Complaint, caused injury to the business or property of Plaintiff and the members of the Class;

        (f)    The effect of the alleged conspiracy on the prices of Lithium Ion Batteries and Lithium Ion Battery Products sold in the United States during the Class Period;

        (g)    Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from the Plaintiff and the members of the Class;

        (h)    The appropriate injunctive and related equitable relief for the Class; and

        (i)    The appropriate class-wide measure of damages for the Class.

93.    Plaintiff's claims are typical of the claims of the members of the Class, and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff and all members of the Class are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for Lithium Ion Batteries or Lithium Ion Battery Products purchased directly from Defendants.

94.    Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Class. Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

95.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

96.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of

similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

97.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## PLAINTIFF AND THE CLASS SUFFERED ANTITRUST INJURY

98.     Defendants' price-fixing conspiracy had the following effects, among others:

(a)     Price competition has been restrained or eliminated with respect to Lithium Ion Batteries and Lithium Ion Battery Products;

(b)     The prices of Lithium Ion Batteries and Lithium Ion Battery Products have been fixed, raised, maintained, or stabilized at artificially inflated levels; and

(c)     Purchasers of Lithium Ion Batteries and Lithium Ion Battery Products have been deprived of free and open competition.

99.     During the Class Period, Plaintiff and the members of the Class paid supracompetitive prices for Lithium Ion Batteries and Lithium Ion Battery Products.

100.    By reason of the alleged violations of the antitrust laws, Plaintiff and the members of the Class have sustained injury to their businesses or property, having paid higher prices for Lithium Ion Batteries and Lithium Ion Battery Products than they would have paid in the

absence of Defendants' illegal contract, combination, or conspiracy and, as a result, have suffered damages in an amount presently undetermined.  This is an antitrust injury of the type the antitrust laws were meant to punish and prevent.

## ACTIVE CONCEALMENT AND TOLLING OF THE STATUTE OF LIMITATIONS

101.   Plaintiff repeats and realleges the allegations set forth above.

102.   Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff and members of the Classes.

103.   Defendants and their co-conspirators conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection.

104.   Defendants and their co-conspirators publicly provided pretextual and false justifications regarding their price increases.

105.   Plaintiff and members of the Classes did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws as alleged herein until shortly before this class action litigation was commenced.

106.   Plaintiff has exercised due diligence by promptly investigating the facts giving rise to the claims asserted herein upon having reasonable suspicion of the existence of Defendants' conspiracy.

107. As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, the statute of limitations otherwise applicable to the allegations herein has been tolled.

## FIRST COUNT
## VIOLATION OF SECTION 1 OF THE SHERMAN ACT
### (On behalf of Plaintiff and the Class)

108. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

109. Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

110. The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

111. At least as early as January 2002, and continuing until such times as the anticompetitive effects of Defendants' conduct ceased, the exact date being unknown to Plaintiff, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for Lithium Ion Batteries, thereby creating anticompetitive effects.

112. The anticompetitive acts were intentionally directed at the United States market for Lithium Ion Batteries, and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for Lithium Ion Batteries and Lithium Ion Battery Products throughout the United States.

28

113. The conspiratorial acts and combinations have caused unreasonable restraints in the market for Lithium Ion Batteries and Lithium Ion Battery Products.

114. As a result of Defendants' unlawful conduct, Plaintiff and the members of the Class have been harmed by being forced to pay inflated, supracompetitive prices for Lithium Ion Batteries and Lithium Ion Battery Products.

115. In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

116. Defendants' conspiracy had the following effects, among others:

(a)     Price competition in the market for Lithium Ion Batteries and Lithium Ion Battery Products has been restrained, suppressed, or eliminated in the United States;

(b)     Prices for Lithium Ion Batteries and Lithium Ion Battery Products sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c)     Plaintiff and members of the Class who purchased Lithium Ion Batteries or Lithium Ion Battery Products directly from Defendants have been deprived of the benefits of free and open competition.

117. As a direct and proximate results of Defendants' anticompetitive conduct, Plaintiff and members of the Class have been injured in their business or property and will continue to be injured in their business and property by paying more for Lithium Ion Batteries

and Lithium Ion Battery Products purchased directly from Defendants than they would have paid and will pay in the absence of the conspiracy.

118.   The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.   The Court determine that this action may be maintained as a class action under Rules 23(a) and 23(b)(2)-(3) of the Federal Rules of Civil Procedure, appoint Plaintiff as Class Representative and his counsel of record as Class Counsel, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Class;

B.   That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)   An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act; and

(b)   A per se violation of Section 1 of the Sherman Act;

C.   Plaintiff and the members of the Class recover damages, to the maximum extent allowed under Federal antitrust laws, and that a joint and several judgment in favor of Plaintiff and the members of the Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

D.   Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and

restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

      E.      Plaintiff and the members of the Class be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

      F.      Plaintiff and the members of the Class recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

      G.      Plaintiff and members of the Class have such other and further relief as the case may require and the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

DATED: October 24, 2012    By:    /s/ Lisa J. Rodriguez

    Lisa J. Rodriguez
    Nicole Acchione
    **Trujillo Rodriguez & Richards, LLC**
    258 Kings Highway, East
    Haddonfield NJ, 08033
    (856)795-9002
    (856)795-9887 (fax)
    lisa@trrlaw.com
    nacchione@trrlaw.com

    Steven A. Asher
    Mindee J. Reuben
    Jeremy S. Spiegel
    **Weinstein Kitchenoff & Asher LLC**
    1845 Walnut Street, Suite 1100
    Philadelphia, PA  19103
    Telephone: 215-545-7200
    Fax: 215-545-7200
    asher@wka-law.com
    reuben@wka-law.com
    spiegel@wka-law.com

    Marvin Srulowitz, Esquire
    49 West 37th St.
    9th Floor
    New York, NY 10018
    Telephone:  212.686.1224
    Fax:  212.532.3206
    marvinlaw@aol.com